UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JOSEPH GREGORY G.S.,

Petitioner,

v.

TONYA ANDREWS, et al.,

Respondents.

No. 1:26-cv-07643-TLN-SCR

A# 233-298-508

**RELEASE ORDER**

This matter is before the Court on pro se Petitioner Joseph Gregory G.S.'s [1] ("Petitioner") Petition for Writ of Habeas Corpus (the "Petition"). (ECF No. 1.) Respondents filed a response. (ECF No. 7.) For the reasons set forth below, the Petition is GRANTED and Respondents are ordered to IMMEDIATELY RELEASE Petitioner.

///

///

///

///

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

## I. Factual and Procedural Background

Petitioner is a noncitizen who entered the United States on December 4, 2023, with his mother and two siblings. (ECF No. 1 at 6; ECF No. 7 at 5.) Petitioner and his family members were granted entry on humanitarian parole. (*Id.*) Petitioner later filed an application for asylum, which remains pending. (ECF No. 1 at 6; ECF No. 7 at 11.)

On August 4, 2026, Petitioner was arrested by local law enforcement for driving without a driver's license. (ECF No. 1 at 5; ECF No. 7 at 11.) Petitioner attempted to pay bond but was instead transferred to the custody of Immigration and Customs Enforcement ("ICE"). (ECF No. 1 at 5–6; ECF No. 7 at 11.) Petitioner was issued a Notice to Appear and transferred between several detention facilities in Florida before being moved to the Golden State Annex detention center. (ECF No. 1 at 6; ECF No. 7 at 5.)

Petitioner has now been detained for nearly four months without a hearing before a neutral decisionmaker to determine whether his incarceration is warranted based on danger or flight risk. (*Id.* at 2.) He challenges the lawfulness of his civil detention and seeks immediate release. (*Id.* at 16–17.)

## II. Standard of Law

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

///

## III. ANALYSIS

Petitioner claims his detention violates the Fifth Amendment Due Process Clause. (ECF No. 1 at 16–17.) In opposition, Respondents argue Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b) ("§ 1225(b)") because he was paroled into the United States.[2] (ECF No. 7 at 1–2.) Respondents do not specify whether they are attempting to invoke the detention authority of § 1225(b)(1) or § 1225(b)(2). (*See generally* ECF No. 7.)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. These due process rights extend to immigration proceedings, including detention and deportation proceedings. *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

///

---

[2] Respondents also claim Petitioner has no right to due process under *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020). (ECF No. 7 at 2.) As this Court and others have repeatedly explained, "*Thuraissigiam*'s discussion of due process is necessarily constrained to challenges to *admissibility* to the United States." *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1171–72 (W.D. Wash. 2023) (emphasis added); *see, e.g.*, *Sadeqi v. LaRose*, 809 F. Supp. 3d 1090, 1092–93 (S.D. Cal. 2025) (finding similarly); *N.M. v. Warden*, No. 2:26-CV-01270-TLN-AC, 2026 WL 1846742, at *4 (E.D. Cal. June 26, 2026) (same). Indeed, the Ninth Circuit has now confirmed *Thuraissigiam*'s lack of applicability to cases like that here, where Petitioner challenges the constitutionality of his detention, not his admissibility. *Padilla v. United States Immigr. & Customs Enf't*, 192 F.4th 894, 917 (9th Cir. 2026) ("In sum, the government's strictly circumscribed detention authority, a pillar of our common law tradition for almost a millennium, stands in contrast to the political branch's 'plenary authority to decide which aliens to admit.' *Thuraissigiam* was an admission, not a detention, case." (citation omitted).)

A. Liberty Interest

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71 (1992)). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

The Court finds Petitioner has a clear liberty interest in his continued freedom protected by the Due Process Clause. The government's decision to release Petitioner on parole was an "implicit promise" that he would not be re-detained during the pendency of his immigration proceedings if he abided by the terms of his release. *Morrissey*, 408 U.S. at 482. Respondents do not claim Petitioner violated the terms of his release. Additionally, while Petitioner's I-213 contains a note stating, "[o]n June 12, 2025, DHS has terminated the parole for CHNV and their immediate family members," (ECF No. 7 at 11), Respondents provide no documentation showing Petitioner's parole was properly revoked. *See Castellon v. Kaiser*, No. 1:25-CV-00968 JLT EPG, 2025 WL 2373425, at *5–6 (E.D. Cal. Aug. 14, 2025) (explaining that a case-by-case analysis is needed to revoke parole). Upon consideration of Petitioner's prior release on parole and the nearly three years he spent living freely prior to his current detention, the Court finds Petitioner has a powerful interest in his continued liberty. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–94 (E.D. Cal. 2025) (finding similarly).

The Court rejects Respondents' argument that Petitioner is subject to mandatory detention under either § 1225(b)(1) or § 1225(b)(2). As to § 1225(b)(1), the government provides no evidence showing Petitioner was ever placed in expedited removal proceedings. To the extent Respondents assume Petitioner falls within § 1225(b)(1) from the sole fact that he was granted humanitarian parole, humanitarian parole is not a proxy for expedited removal. As the Ninth Circuit has explained, "not all noncitizens eligible to be placed in expedited removal proceedings are in fact placed in such proceedings." *Flores v. Barr*, 934 F.3d 910, 916 (9th Cir. 2019). "The government has discretion to place noncitizens in standard removal proceedings even if the

expedited removal statute could be applied to them." *Id.*; *see*, *e.g.*, *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1130–32 (D. Or. 2025) (example of asylum seeker who was granted humanitarian parole and placed in standard removal proceedings). Here, Petitioner was issued a Notice Appear stating Petitioner is "in removal proceedings under section 240 of the Immigration and Nationality Act[.]" (ECF No. 7 at 5.) "Section 240 proceedings" are standard removal proceedings. *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1157 (S.D. Cal. 2025); *see* 8 U.S.C. § 1229a (codifying § 240 of the INA). Any claim that Petitioner is subject to mandatory detention for expedited removal under § 1225(b)(1) thus fails on the present record.

As to § 1225(b)(2), the Ninth Circuit has confirmed that the mandatory detention scheme of § 1225(b)(2) applies only to noncitizens "entering the United States at the border." *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1172 (9th Cir. 2026). In contrast, individuals like Petitioner who are "present without admission who are apprehended in the interior of the United States," are subject to discretionary detention under § 1226(a). *Id.* at 1165.

Accordingly, Respondents' argument that Petitioner is subject to mandatory detention under either § 1225(b)(1) or § 1225(b)(2) fails. Petitioner maintains a clear interest in his continued liberty protected by the Due Process Clause.

### B Process Required

To determine what process is necessary to ensure any deprivation of Petitioner's protected liberty interest accords with the Constitution, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). These factors support Petitioner's constitutional right to notice and a pre-deprivation hearing.

First, as explained above, Petitioner has a significant private interest in his own liberty that is unquestionably affected by the government's actions detaining him. The amount of time Petitioner spent at liberty underscores the gravity of its loss.

Second, the risk of erroneous deprivation of Petitioner's liberty interest is considerable. Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest for his detention to comport with due process. *Zadvydas*, 533 U.S. at 690. While "[t]he government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings," Petitioner has received virtually no procedural safeguards to ensure any detention is reasonably related to those purposes. *Hernandez*, 872 F.3d 976. Respondents do not argue Petitioner is a danger or a flight risk. Nor do Respondents argue the purposes of Petitioner's parole have been served such that his return to custody is justified. 8 U.S.C. § 1182(5)(A). The risk that Petitioner is being detained without proper justification is therefore exceedingly high.

Finally, the government's interest in detaining Petitioner without notice or a hearing is low, and the effort and cost required to provide him with procedural safeguards are minimal. Notice and custody determination hearings are routine processes for Respondents. Any burden associated with their provision does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation. Respondents articulate no legitimate interest in detaining Petitioner absent these processes.

Upon consideration of the *Mathews* factors, the Court finds due process required that Petitioner receive notice and a hearing before a neutral decisionmaker prior to detention to determine whether his detention was justified. He received neither. Petitioner's detention therefore violates the Fifth Amendment Due Process Clause.

## IV. CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus (ECF No. 1) is GRANTED. It is FURTHER ORDERED:

1. Respondents must IMMEDIATELY RELEASE Petitioner Joseph Gregory G.S. (A# 233-298-508) from custody. At the time of release, Respondents must return all of Petitioner's documents and possessions and provide a copy of this Order. Respondents must file a **notice certifying compliance** with this provision **within two (2) court days** from the date of this Order.

2. Respondents are ENJOINED from re-detaining Petitioner, while subject to 8 U.S.C. § 1226, absent compliance with statutory and constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral factfinder where the government must establish by clear and convincing evidence that its interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention such that no alternative to detention can mitigate that risk. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). At any such hearing, Petitioner shall be allowed to have counsel present. In the event Petitioner becomes subject to a final and executable order of removal, Respondents shall provide a minimum of ten-days' written notice of their intent to detain Petitioner for removal prior to detention. Such notice shall not be issued until the removal order becomes final and executable in accordance with 8 U.S.C. § 1231 and 8 C.F.R. § 1241.1.

3. Petitioner's application to proceed *in forma pauperis* (ECF No. 2) is GRANTED.

4. Petitioner's motion to appoint counsel (ECF No. 3) and motion for temporary restraining order (ECF No. 4) are DENIED as moot.

5. **The Clerk of Court is directed to serve Golden State Annex Detention Facility with a copy of this Order.**

6. The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

DATE: November 23, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE